UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00140-GNS-LLK

GALEN E. LANGSTON                                                           PLAINTIFF

v.

U.S. DEPARTMENT OF LABOR                                                    DEFENDANT

# MEMORANDUM OPINION & ORDER

Plaintiff Galen E. Langston ("Langston") brings this action for judicial review of two decisions issued by the Department of Labor ("DOL"). For the reasons discussed below, neither decision is reviewable, and Langston's claim is **DENIED**.

## I.      BACKGROUND

### A.     Statutory and Regulatory Background

The Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. §§ 7384 to 7385s-16, allows individuals who suffer from illnesses as a result of exposure to toxic substances during the course of their work for the Department of Energy ("DOE") and its predecessor agencies to seek monetary benefits. To obtain benefits under Part B of the Act, a claimant must file a claim with the DOL's Office of Workers' Compensation Programs ("OWCP") demonstrating that he developed chronic beryllium disease ("CBD") or cancer as a result of his exposure to beryllium or other toxic substances while employed at a DOE facility.[1]  *Id.* §§ 7384s(a)(1), 7384l(7), 7384l(8), 7384l(15); 20 C.F.R. §§

---

[1] When documentation establishes that the employee worked at a DOE facility during a period of time when beryllium dust, particles, or vapor may have been present, the employee's exposure to beryllium is presumed. *Id.* § 7384n(a).

30.100, -.101.  Similarly, a claimant may receive benefits under Part E of EEOICPA if he files a claim with the OWCP establishing that he has suffered permanent impairment as a result of "any illness" caused by "exposure to a toxic substance" at a DOE facility.  *Id.* § 7385s(2).

After a claimant submits an application for benefits, the OWCP district office issues a recommended decision informing the claimant of its recommended findings of fact and conclusions of law.  20 C.F.R. §§ 30.300, -.306.  Thereafter, the claimant may file written objections to the recommended decision with the Final Adjudication Branch ("FAB").  *Id.* § 30.310.  The FAB will consider any objections and issue a final decision on the claim.  *Id.* §§ 30.300, -.316.  The claimant then has 30 days to request that the FAB reconsider its decision.  *Id.* § 30.319(a).  "If the FAB denies the request for reconsideration, the FAB's original decision is considered 'final' on the date the request is denied . . . ."  *Id.* § 30.319(c)(2).

At any time thereafter, a claimant may file a written request with the Director of the OWCP's Division of Energy Employees Occupational Illness Compensation to reopen a claim based on new evidence demonstrating covered employment or exposure to a toxic substance.  *Id.* § 30.320(b).  If the Director decides that the matter raised by the request is material to the claim, the Director will reopen the claim and return it to the district office for further development.  *Id.* § 30.320(b)(1).  The Director's decision as to whether to reopen a claim is discretionary and not subject to administrative review, and the decision to deny a reopening request is not subject to judicial review when based on the fact that the claimant submitted no new evidence.  *Id.* § 30.320(c); *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 636 (6th Cir. 2016).

B.    **Factual and Procedural Background**

Langston worked for the DOE in various roles at the Paducah Gaseous Diffusion Plant ("PGDP") from March 18, 1973 until September 17, 2002.  (Administrative R. 1546-47, 2731

[hereinafter AR]). He claims that he was exposed to toxic substances during that time, and that he developed several illnesses as a result. (*See, e.g.*, Compl. ¶ 9, DN 1). Over the past seventeen years, Langston has sought—but been unable to obtain—EEOICPA benefits for his illnesses. (*See, e.g.*, Compl. ¶ 10). The attempts relevant to his claims for judicial review are as follows:

In July 2001, Langston filed a claim under Part B, alleging that he developed brain cancer as a result of his exposure to toxic substances while working at the PGDP. (AR 1585). On November 25, 2002, the FAB denied his claim, reasoning that the medical evidence he submitted in support of this claim was insufficient to establish a diagnosis of brain cancer. (AR 1504).

Langston then submitted two new claims. First, Langston filed a claim for Part B benefits, arguing that he developed CBD as a result of his work at the PGDP. (AR 1070-72). The district office denied this claim, as did the FAB.[2] (AR 916-21, 986, 988-92). Second, he submitted a claim under Part E, alleging that he suffered from myasthenia gravis, heart attacks, chronic bronchitis, and central blepharospasm (the "Part E claims"). (AR 954). In response, the district office explained to Langston that it had already processed the Part E claims—along with others, including one for CBD—under the formerly titled Part D of the EEOICPA, and that, at that time, it concluded that Langston was not entitled to benefits. (AR 886-87). In addition, the district office advised Langston that it intended to review the Part E claims, along with all other claims he submitted under the formerly titled Part D, and asked him to submit new evidence substantiating these claims. (AR 885-87). Langston never responded, and, on July 25, 2007, the FAB issued a final decision denying his Part E claims and deferring decision on his Part E claim for CBD. (AR 807-13). On October 31, 2011, the FAB denied Langston's claim for CBD under Part E because the medical evidence failed to show that he had CBD. (AR 714-16).

---

[2] The district office issued its decision on Langston's Part B claim for CBD on June 1, 2006, and the FAB issued its final decision about that claim on December 4, 2006. (AR 918, 988-92).

On October 6, 2011, Langston's representative, Gary Vander Boegh ("Vander Boegh") asked the District Director to reopen a few of Langston's claims, including his: (1) Part B claim for brain cancer, (2) Part E claim for chronic bronchitis,[3] and (3) Part B claim for CBD. (AR 725-31). In the reopening request, Vander Boegh submitted medical evidence showing that Langston developed brain cancer as a result of his work at the PDGP. (AR 674-75).

In response, the District Director granted in part and denied in part Langston's reopening request. Specifically, on May 3, 2012, the District Director reopened Langston's brain cancer and chronic bronchitis claims. (AR 652-56). On May 6, 2012, however, the District Director denied Langston's request to reopen his Part B claim for CBD. (AR 644-50).

Despite having reopened Langston's Part B claim for brain cancer and Part E claim for chronic bronchitis, the district office denied both claims on the merits, and, in a decision issued August 23, 2013, the FAB concurred. (AR 290-307, 467-77). With respect to Langston's claim for brain cancer, the FAB concluded that the medical evidence was insufficient to establish that Langston had brain cancer. (AR 303). In addition, the FAB held that Langston's exposure to toxic substances at the PDGP did not cause that condition. (AR 303, 306).

Then, on April 4, 2014, Vander Boegh asked the District Director to reopen Langston's CBD claims under Parts B and E. (AR 19-21). In support of the request, Vander Boegh submitted an excerpt from the DOL's Site Exposure Matrices ("SEM"), which listed welding fumes as a potential cause of CBD. (AR 19-21). On May 22, 2014, the District Director denied the request. (AR 12-16). Specifically, the District Director reasoned that Langston's CBD claims had been previously denied for want of medical evidence demonstrating that he had CBD,

---

[3] For clarity, the Court notes that the FAB denied Langston's Part B claim for brain cancer in its decision issued November 25, 2002, and that the FAB rejected Langston's Part E claim for chronic bronchitis in its decision dated July 25, 2007. (AR 807-813, 1504).

4

and that the extract from the SEM supplied exposure evidence rather than evidence indicating a CBD diagnosis. (AR 12-16).

Langston then filed suit in this Court seeking judicial review of two decisions. First, he sought review of the District Director's May 22, 2014, decision declining to reopen his claim for CBD under Parts B and E. (Compl. ¶ 1; Pl.'s Br. 6-10, DN 29). Second, he sought review of the FAB's December 4, 2006, decision denying his claim for CBD under Part B. (Pl.'s Br. 10-24). Langston's claims for judicial review are ripe for adjudication.[4]

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331 because a federal question under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, is presented.

## III. DISCUSSION

As noted, Langston seeks review of two of the DOL's decisions. The Court will address Langston's claims for judicial review separately.

### A. Reopening Request

First, Langston seeks review of the District Director's May 22, 2014, decision declining to reopen the FAB's earlier decisions denying his claims for CBD under EEOICPA Parts B and E.[5] (Pl.'s Br. 6-10). Requests to reopen EEOICPA claims are reviewable under certain

---

[4] The Court recognizes that, in the Complaint, Langston suggests—albeit in passing—that he is seeking review of all FAB decisions. (Compl. ¶ 1). As noted, however, Langston only addressed one reopening request and one final decision in his opening brief. (Pl.'s Br. 6-24). Given that the parties agreed to submit their arguments in an appellate manner, the Court finds that Langston has waived all claims for judicial review that he failed to raise in his opening brief. (*See* Stipulation Br. Schedule 1-2, DN 26). Thus, Langston has only properly presented the two aforementioned claims for judicial review. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (noting that claims not raised in the opening brief are waived).

[5] In his opening brief, Langston refers to his September 22, 2013 request to reopen his CBD claim as the reopening request that the District Director denied on May 22, 2014. (Pl.'s Br. 9). Because the remainder of his brief describes the basis of the reopening request as evidence of

circumstances. In *Berry v. Department of Labor*, the Sixth Circuit held that requests to reopen Part B claims based on new evidence are subject to judicial review, whereas those based on material error are not. *Berry*, 832 F.3d at 636. This Court has since held that the rule of *Berry* applies to requests to reopen Part E claims. *See Featherston v. U.S. Dep't of Labor*, No. 5:14-CV-00132-GNS-LLK, 2016 WL 4746211, at *5 (W.D. Ky. Sept. 12, 2016).

In this instance, the Court cannot review the District Director's decision declining to reopen the FAB's decisions denying Langston's CBD claims. The only document Langston attached to his reopening request was a one-page excerpt from the SEM identifying toxic substances that can cause CBD. (AR 19-21). The FAB, however, did not deny Langston's CBD claims on the ground that he failed to establish that he was exposed to toxic substances; rather, the FAB denied his claim because Langston failed to prove that he suffered from CBD. (AR 710-16, 916-21). As a result, the SEM Langston submitted with his reopening request was not new evidence. *See Featherston*, 2016 WL 4746211, at *5. Therefore, the Court concludes that Langston's reopening request was based on a purported material error in the FAB's decisions. Under *Berry*, the denial of such reopening requests is not reviewable.

### B.     Final Decision Issued May 22, 2014

Second, Langston asks the Court to assess the propriety of the FAB's decision denying him Part B benefits for CBD. (Pl.'s Br. 10-23). As this Court has explained: "Part B of the EEOICPA does not contain any provision either allowing or precluding judicial review . . . ." *Featherston*, 2016 WL 4746211, at *2. As a result, district courts use the APA's standards and procedures—including the APA's six-year statute of limitations period—in determining whether judicial review of a Part B claim is warranted. *See id.*; *see also* 28 U.S.C. 2401(a).

---

exposure to welding fumes, however, the Court will assume that he intended to refer to his April 4, 2014, reopening request, which was denied on May 22, 2014. (AR 12-21).

Here, the FAB issued its final decision regarding Langston's Part B claims for CBD on December 4, 2006, and he filed his claim for judicial review of that decision on July 10, 2014. (AR 916-21, 988-92). Thus, Langston's claim for judicial review falls well outside the APA's six-year limitations period, and, as such, the FAB's decision is unreviewable.

## IV. CONCLUSION

In sum, neither the District Director's May 22, 2014, decision declining to reopen the FAB's earlier decisions denying his CBD claims, nor the FAB's December 4, 2006 decision denying his Part B CBD claim, are reviewable. Accordingly, this case is **DISMISSED WITH PREJUDICE**, and the Clerk shall strike this case from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
March 26, 2018

cc: counsel of record